Good morning. The first case on our call this morning is agenda number 19, case number 105-530, People of the State of Illinois v. Andre Richardson. Council may proceed. Good morning, Mr. Chief Justice, Honorable Justice, Mr. Chairman. May it please the Court, I am Assistant State's Attorney Ashley Romito of the Cook County State's Attorney's Office on behalf of the people of the State of Illinois. On February 9, 2001, at 2.30 p.m., Chicago police were dispatched to the scene of an injured infant. Upon arrival, Officer Hayes arrived at an apartment building and saw paramedics rushing a limp, unconscious, 11-month-old infant out of the apartment building, the victim in this case, Diamond Clark. She was accompanied by her father in this case, the defendant, who was significantly the only adult with her for the last day and a half. Officer Hayes was immediately summoned to that ambulance to look at the glaring, obvious signs of physical abuse afflicted to that baby. She had bite marks covering her chest, her arm, and to her head. Both her eyes were blackened and bruised. She had swelling to her face. Additionally, she had whip marks crisscrossing her buttocks, her back, and her thighs. There were also defensive wounds and other injuries of bruising. The defendant told the officer on the scene the baby had fallen in the bathtub earlier the previous afternoon, that he did not bite her, and that he had to whip her because she had vomited her cereal on his bed as a form of punishment. The baby was taken to the hospital along with the defendant where she later died of massive internal injuries to both her body and her brain. What has never been contested in the trial court or ever is that the defendant is the person who killed that baby. The only issue decided on appeal and before this Court is the voluntariness of the defendant's videotaped statement specifically addressing that he was struck in the lockup by a guard four hours prior to interrogation before any detectives arrived on the scene. Both sides agree this question is governed by the Federal Due Process Clause embodied in the 14th Amendment and it cannot be disputed in all voluntariness questions. The ultimate issue is whether the defendant's will was overborne at the time he confessed. In other words, is that statement a product of free will? That test requires an assessment of the totality of the circumstances in each and every case which necessarily includes the allegations made by defendants to make that assessment and answer that question. The burden is always on the people. And usually it's by a preponderance of an evidence. However, when a defendant while in custody has sustained physical injuries and he's made an allegation of physical coercion based upon those injuries, the burden is heightened to clear and convincing. To be perfectly clear, the people make no effort here today to diminish that burden, to alter it, to shift it in any way. What the people take great dispute with the defendant's position in that of the appellate court is that the remaining totality of the circumstances are not only irrelevant, but they are to be ignored as a question of law by the courts of review and the circuit court making that determination that the only question is how and why those injuries were inflicted regardless of anything else. And this is just simply wrong for several reasons. Number one, it creates an irreducible presumption of involuntariness, an automatic rule of exclusion when injuries are occurred and are not justified. This position has already been explicitly rejected by this court in People v. Woods. Moreover, there is absolutely no basis to do so, as defendants do not have a right to have voluntary, and I repeat the word is voluntary, statements suppressed due to political reasons. Ms. Romito, as a general matter of logic, if the State doesn't offer at least some explanation for how the injury occurred in custody when Howard took place, how can a court say that the injury had nothing to do with obtaining a subsequent confession? Ms. Romito, as a general matter of logic, if the State doesn't offer at least some explanation for how the injury occurred in custody when Howard took place, how can a court say that the injury had nothing to do with obtaining a subsequent confession? So to look for justification, which the people absolutely do not... Can we look at just some of the factors so we're clear what they are? Absolutely, Your Honor. The defendant was 16 years old, is that accurate? That is accurate. You referred to him earlier as an adult, and you meant that he was in adult court, is that correct? He was the only person with a child, but yes, he was in automatic transfer, he was in adult court. All right, but he was 16. He was 16. And he had 61 IQ? Your Honor, I'm glad you brought that up. The defendant's mental state or any diminished capacity or any question of him being mentally retarded was never an issue litigated in this case, nor was there ever an expert opinion defining it as such. That issue makes its way into the record in the pre-sentence investigation. The probation officer noted that the defendant had been in special education schools his entire life, but was constantly thrown out of them for fighting with teachers as well as other students. So the pre-sentence report was part of the record in this case? Oh, it's absolutely part of the record, but I'm getting... Did it show that the IQ was 61? The psychologist who interpreted those results made an equivocal. He said the defendant appears to be retarded based upon the test scores. But he also said that it appears, and it wasn't a certain finding, and that wasn't his full report and the raw data. Could I ask you one more time? Yes, sir. Was it 61? I don't know the answer to that, because when you look at the doctor's report, he said it may be an un... He specifically qualifies and says due to motivational factors... What is it that he qualifies? He qualified the diagnosis or any... He diagnosed that the defendant may have had lower scores than are actually correct. He also said that this wouldn't be necessarily a fixed state. So it was certainly a question... Does the 61 appear in the report? I'm asking. It does, Your Honor. Thank you. It does, along with the Dr. Nye's explanation that they may have underestimated the defendant's IQ. And no question we're not talking about somebody that would not necessarily fall into borderline intelligence range. But looking at the other factors, this was also not... Okay. There was no evidence concerning what actually happened in that lockup, was there? There was actually evidence. What, after the statement? The evidence came from no... Well before the statement. Well before the statement. The defendant's mother testified exactly as to the circumstances of that injury, that she had left at the police station to verify that her son was in fact 16 years old and not 17 years old, as the police had been led to believe or had a question. And she'd only been gone for 20 minutes. And upon returning, she heard her son yelling extreme profanities in the hallway, directed at someone. She ran through an open door and saw her son. And at this point, he had an injury to his eye. And at that point, she asked her son what happened. And the defendant replied, quote, unquote, that mother hit me. The mother demanded to see somebody. And the mother asked who did this. And he pointed to a guard. He said the guard did it. He said it was a uniformed African-American guard during the fingerprinting procedure. There was an OPS investigation of this incident? There absolutely was. It was running at the same time that the investigation of the baby's death was running? That's correct. Now, is it true, as alleged in the briefs, that the OPS officers were not allowed to talk to the defendant until after the statement had been given? It appears to be that was what happened in this case. But that should not trouble you, Your Honor. Well, that's really my decision whether it troubles me or not, Counsel. Thank you. But all of these things that we've just talked about are the kinds of things that go into the totality of the circumstances, aren't they? That's correct. Okay. What the appellate court did in this case, though, was specifically ignore the remaining totality of the circumstances. The appellate court said it was irrelevant that the defendant understood his Miranda warnings. It was irrelevant that the injury happened four hours later, that he was legally detained, that he was not handcuffed, that he had a concerned adult with him at all times, as well as a youth officer, that the defendant was able to recite specifically what his Miranda warnings went. The appellate court found it irrelevant that the defendant made a videotaped statement which offers this court a window by which to view the interrogation process, where instead of paying lip service or looking to what a defendant had to say about any certain injuries, you now have an absolute window into the interrogation where you can see that this defendant is certainly articulate, suffering from no impairments, does not appear to be in pain, disoriented or confused, and in fact is quite animated, describing the injuries, what happened to his own mother, is sitting next to him and has the same calm, collected demeanor and is at point nodding her head. So the appellate court found as a matter of law that it could not look at those points and in fact disregarded them in reaching their analysis. And that is something that this court has never advocated. When you go back to 1948 and see People v. Tomlinson, what this court made clear is that when a defendant is injured in custody, federal law requires that you look to that, that a strong presumption that it was designed to elicit a statement and the burden must be clear and convincing and it can't be done by mere denials to reject that. But the court never said to disregard the totality of the circumstances. Moving forward... Counsel, it's your position that there was an extended period of time between the officer striking the defendant in the lockup and the time the statements were given, right? Yes. It was over four hours. The detectives, the questioning detectives were not... Let me just finish. It would appear that even though you disagree with the appellate court decision, that the appellate court found likewise because I believe that they stated that the defendant couldn't separate the fear associated by being punched in the lockup from any subsequent interactions with police officers or detectives. So, and I don't think you ever responded to Justice Burke's question and that is, it is your position that there was uncontroverted evidence in the trial court, isn't it? And that this strike to the face of the defendant was not at the time the statements were given. That's correct. It was four hours before. And when the appellate court made the determination that the defendant might not be able to separate the fear, that was not the basis of allegations or the focal point at any time. The defendant absolutely has no burden, but our law does require that he files a written motion. In fact, in this case, the people asked repeatedly the defendant to specify he never made any allegations of coercion with respect to a guard in the lockup. In fact, his allegations were specifically directed to the two Caucasian plainclothes detectives. The defendant's own mother demonstrated those allegations to be absolutely unfounded and false. So the fact that the defendant never alleged that there was any coercion by this lockup keeper, the people clearly established certainly there would be no reason for him not to include that, number one, in the OPS complaint or later in his motion. So the court basically raised an issue on behalf of a defendant that was not part of the litigation or an allegation by the defendant. Moreover, this court has never held that the individual wrong act of any particular officer will result in an automatic, incurable finding of inadmissibility of the statement. In fact, this court has stated just the opposite by recognizing there can be a break in the stream of events that would, in fact, be able to parse out whatever happened previous to that. And the defendant in this case made absolutely no allegation that he was all intimidated or afraid. Looking at the totality of the circumstances, it's quite the opposite. When he used from looking at the record that there was no evidence in this record of why the lockup attendant struck the boy. Is that accurate? That is accurate. And the people made no offer. Why should we assume from that that it was totally separate from the investigation itself? Because the subjective state of the lockup keeper is not the focal point. It's that of the defendant, and it is not reasonable to assume that it was part of the process. When you look at all that happened, the immediate reaction of the defendant and the police, a sergeant in a uniform came and he took the report of the defendant and her mother, promptly addressed it. He notified the watch commander. There can be no question that OPS came out and did a formal and full investigation. And in no efforts to protect the brother officer, in fact, complained within that investigation. The record is quiet as to the outcome of that investigation. Is there a reason for that? I don't know the answer to that. I believe the record would be quiet to that, because the parties were prepared to stipulate to portions of the OPS record, and I can only speculate that the reason they didn't is because the focal point of the allegations never turned to raise any concern. In light of what happened during the fingerprinting process, well, the detectives are not there and do not know this person, and there was immediate outcry, met with a proper police response. I submit it's not reasonable, and there was never any allegation that that was part of the process. It was simply against the detectives that the defendant's own mother crushed with her testimony. But that didn't produce a coercive event, a coercive environment to take the confession, or that they were, you know, a means of producing the confession. I mean, you've talked, in answer to Counselor, the number of the justices' questions, you've talked about what appears to me to be inferences from what isn't there. But what did the trial court have to base the decision on? The trial court primarily based her decision upon the videotaped statement and totality of the circumstances and the defendant's allegations. And even trial counsel said, consider the freestanding injury within the totality of the circumstances. There never was any allegation that that guard punched the defendant in an effort to elicit a statement. In fact, it did not. He did not make a statement. None was taken in the lockup. So you can assume several things, that he might attempt to justify it, and that's what he said to OPS, which we don't make that allegation, that he punched him because he was outraged by his crime, or perhaps he meant to try and help detectives who he did not know that were not even in the police station and not assigned to that case. But as I stated, this Court's stare decisis says that does not end the inquiry. You look at all that happened next, and it was an absolutely appropriate police response, and the evidence doesn't demonstrate that the defendant was intimidated. Is it sufficient that the defendant said on the videotape that he wasn't coerced and it was voluntary? Is that in the State's argument? That's part of the statement. That's part of it. I don't say that that's the only thing this Court should look to, but you should certainly look to the defendant stating that and his demeanor while he said it, and that of his mother, and to look to how he recites his Miranda warnings in his own words and is able to articulate the difference between adult court and juvenile court and to take into consideration he's not a stranger to the juvenile justice system. He had a prior aggravated battery. But in addition to that, counsel, I mean, you ask us to look at the totality of the circumstances like the Apollo Court did. I mean, what's to say that if you look at the defendant and his age and also his perhaps diminished capacity that you can question and find just the opposite? Is that perhaps he felt a fear and was, you know, subconsciously feeling that if he went any other way, he would be hit again? I would expect that to be part of the allegations, Your Honor, which were not made in this case. And I also say when the Apollo Court reached that conclusion, it really purposefully ignored everything else at play. And that's why I don't think it's an accurate assessment. Because they purposely ignored the remaining totality of the circumstances. And because the relevant focal point is, and significantly the defendant didn't make any other allegations. He was unsworn to his motion, and he didn't testify to anything different. Which is why the subjective state in what had happened, there was no point to go into it other than to offer a mere denial by the lockup keeper, say he hit him just because he wanted to, or maybe even if he was trying to help the police. The point is he didn't, and the focal point is to answer the voluntariness question by focusing upon the defendant's state of mind. At the end of the day, isn't the issue whether or not this confession was voluntarily given? Yes. And what is our standard of review, first of all, as to the trial court's findings with regard to fact, and then as to the ruling on the motion to suppress? The trial court's findings of fact are against the afforded great deference manifest way to the evidence, and standard of review with respect to the question of law is de novo. Does the focus of this case, being the injury to the defendant prior to the time of questioning, change in any way our review of whether or not the confession was voluntarily given, or is that just a factor to be considered? I'm sorry, Your Honor. I think the focus of this case, of course, is the injury that occurred some hours prior to the time the confession was videotaped. Is that, that is just, that is a factor we need to consider. That is just a factor, and the entire burden is raised to clear and convincing. The defendant made other allegations, which were also rebutted by his mother. He made allegations that he had been promised things and threatened, and his mother rebutted that and undermined the written allegations that were before and that the people were attempting to rebut. So it is part of the equation, and certainly the burden is raised to clear and convincing. And I think when you apply the totality, in fact, they say that you do, when you apply all the totality of the circumstances, is the appellate court did not, you reach the conclusion that that statement was indeed voluntary. Counsel, your time is up. However, Justice Thomas wants to ask one more question. Just as many as he wants. Just quickly. I note that your requesting of this Court that even if we find for you on the primary issue of the voluntariness of the confession to address the harmless error argument, but you would admit there is no reason to address that argument if we agree with your primary position, right? The reason to address that is it was an important question of law that has gone unaddressed by this Court. Right. But most likely it would be dicta if we agree with you on the voluntariness of the confession, right? The harmless inquiry? We don't get to the harmless inquiry unless we found the confession wasn't voluntary, do we? You can if you use your supervisory authority. Thank you. Ms. Chang. Mr. Chief Justice, and may it please the Court, my name is Melissa Chang and I represent Andre Richardson. This case is about police brutality and physically coerced confessions. The appellate court properly recognized that Andre's videotape statement should have been suppressed as a product of the physical abuse he received while in police custody. Even the State's evidence showed that he was physically injured at the hands of the police before he gave any statements. And so because he was injured in police custody, it was up to the State to prove by clear and convincing evidence that the injuries were not inflicted to induce a confession. They had to explain those injuries. Counsel, what's the significance, if it's accurate, you can tell me if it's not, that the motion to suppress does not allege his grounds anything to do with what happened in the lockup? Well, Your Honor, under the Woods-Wilson test, it's not the defendant's burden. I'm sorry, I didn't hear you first. Under the Woods-Wilson test, it's not the defendant's burden to allege particularly who caused this injury and to get the name and the rank of the officer who caused these injuries to him, as long as they allege that the confession was coerced and as long as there's evidence of physical abuse, then it becomes the State's burden to explain those injuries. So they don't need, so the defendant doesn't need to allege who did it or that particularly that because of these injuries, the confession was coerced. As long as he alleges that the confession was coerced and there's evidence of physical injury, that's enough. Well, here the defendant doesn't make the claim. There's a four-hour time lag between the strike and the lockup and the statements. What if it had been a day, two days, a week? Is your position then that in each of those instances, they would have to explain that the strike, even if everything else that's in the case, would still have to address the fact that that strike seven days earlier had nothing to do with that confession? Well, Your Honor, under the test in Tomlinson, if the defendant is injured in police custody and he's held in the same place of confinement and held under the same constraints, then that is involuntary. Now, if he were released, if he was given counsel or if he was given any indication that this wouldn't happen to him again, maybe it would be a different story. But here we have a 16-year-old kid who's punched by a police officer at the police station, and he isn't given any indication that this wouldn't occur again. When the OPS investigators come to talk to him, they prevent him from doing so, because according to Detective Zalatorse, that's an administrative thing, and our criminal investigation supersedes that administrative review. It seems that the appellate court certainly agreed with you, and it seems like they felt that there was no way of telling that this defendant who gave the confession four hours later wasn't thinking about the strike that happened four hours earlier. What if at all, what import if at all, does the fact that the testimony related to any reaction by the defendant to that strike was anger in what he said to his mother? Rather than fear, does that play any part in our decision as further being able to glean from that that there wasn't this worry about the earlier strike? Okay, well, first, to address a point that's implicit in your question, it's not entirely clear that the injury occurred exactly four hours before the first confession, because a huge part of the problem is we don't know exactly when the injury occurred. We know it occurred roughly between 6 and 7 30, and that he was first interrogated at 9 o'clock. But we don't have a very specific timeline on when that injury occurred. Number two, as to his reaction to it, this court made it really clear in Woods that you're not supposed to focus on the defendant's reactions, because the circumstances surrounding the confession itself, that is relevant to the determination of voluntariness, and you do look to the totality of the circumstances under normal circumstances. But under the Woods-Wilson test, if there's an injury before the statements, then you also have to prove that the injury was not inflicted to induce a confession. So the totality of the circumstances is step two under the Woods-Wilson test. But before you get to that step two, you have to prove in step one that the injuries weren't inflicted to induce a confession. So if you can't clear step one, it doesn't matter what the defendant's reactions were. With regard to the issue of voluntariness, though, the mental state of the defendant would be important, would it not? Again, if there weren't these unexplained injuries, and we were just dealing with an ordinary confession, no injuries, yes, his mental state would be important. Is there anything in the record to indicate what the defendant's fear or concern was with regard to the earlier statements? Was it anger, was it fear? Well, I mean, it's difficult to say. What we do have is Andre's mother's testimony saying that as soon as she saw him and she saw that his face was very swollen and that he had a knot on his eye, that he was crying and he was very upset. We don't have his direct testimony, but under the Woods-Wilson test, it's not his burden. It's the state's burden to remember exactly what happened and testify exactly how that affected him and to explain in perfect detail what happened. It's the state's burden to come forward with that evidence. And the reason is because the state is in a superior position to get that evidence. They have better access to proof. And so we put that burden on the state to come forward with that evidence. And because they failed to do so, they can't just say, well, the defendant didn't explain himself. No, it's their burden. Counsel, kind of a two-part question. Do you agree that however we do it, it's the totality of the circumstances analysis, I guess, or is it your position that once the injury is demonstrated, it's a per se situation that establishes the fact that the statement is grounds for reversal? I do want to make it clear that our position is the injury needs to be explained. If you look at page 207 of the Davis opinion and page 267 of the LaFront opinion, they say that normally the totality of the circumstances, you know, you must prove voluntariness by the totality of the circumstances. But if there is an injury, then the state must explain the manner of their occurrence and they must prove by clear and convincing evidence that they weren't inflicted to induce a confession. So this is a necessary step before you get to the totality of the circumstances. And our position is certainly that even if you do consider the totality of the circumstances, there's no question that this is involuntary as well, because for the factors we said earlier, that he was 16 years old, that he was injured, that he was injured, and for all the reasons in our brief, there's just no indication that this is voluntary. However, under the Woods-Wilson test and LaFronta and Thomas... What the state has to establish as clear and convincing is that fact, the fact that the injury was unrelated to the statement. Correct. They have to prove that the reason he was injured was not related to the purpose of getting a confession. And the videotaped statement by the defendant that indicated where he indicated that the statement was not related to the injury? How does that affect the calculus? Well, Thomas and Ashcroft specifically address that situation and they say it's not okay to get the defendant just to agree that this was voluntary in the confession itself. That doesn't have any part in the calculus. Not under the Woods-Wilson test and not under the ordinary voluntariness totality of the circumstances test. Counsel, how does his alleged diminished capacity have any influence on this? Well, the facts, the particular facts of this defendant and of the confession would affect the totality of the circumstances test. So they won't affect the way you analyze it under the Woods-Wilson test. But it does show why exactly this test is necessary, because it's really not up to the defendant. Under the Woods-Wilson test, the defendant doesn't have to remember, you know, what happened and they don't have to, you know, right after he's being beaten, get the name and rank of that officer and of the other officers who are present. It's not his burden. And this is exactly why, because he shouldn't be held to that standard when he's the one being held in police custody. And I'd like to just briefly address one thing the state mentioned is that the subjective intent of the lockup keeper is irrelevant and that why he was injured, why Andre was injured doesn't matter. But again, under 60 years of this court's president, that's the only question that they have to answer. If they don't answer that question, they can't get to the totality of the circumstances. So if they don't explain, if they don't give a neutral explanation and show that it was completely unrelated to trying to get a confession, then they failed to meet their burden. I'd just briefly like to touch on the harmless error part. That should this court reach, find that the appellate court was correct in suppressing the confession, this court should also adhere to its 60 years of precedent that once it is determined that a physically coerced confession was improperly admitted trial, a new trial is required, period. There are no exceptions. And the reason is because police brutality on any level is unacceptable. And at the end of the day, both... That's why we wouldn't be able, in your argument, to look at the harmless error nature of the statement. I'm sorry, I'm not sure I understand your question. Your argument would prohibit using harmless error to determine whether or not we should reverse the case. That's correct, because under this court's precedent, once you determine that a physically coerced confession was admitted, you don't look to the other evidence or the other circumstances of the case. You have to provide a new trial. And so both of these issues come down to one question. Is it okay for the police to injure someone to get a confession? And the answer has to be no. And so if the state can't explain why someone was injured, number one, they can't use the confession at trial. And number two, if they do use the confession, there has to be a new trial. Because this court has to be clear that there's no gray area. No amount of police brutality is acceptable. And so if there is police coercion and a confession results, there has to be a new trial. So for those reasons, we ask that you affirm the appellate court's decision suppressing the confession and demanding for a new trial. Thank you. Counsel, you may proceed. To be clear, this court has already stated in Woods that the state must deduce by clearing convincing evidence as to when or how defendants' injuries occurred or that they were unrelated. This court in Woods specifically rejected a per se rule that all injuries must be explained. Moreover, contrary to defendant counsel's assertions, the timeline as to when that injury happened is absolutely lasered in between 515 and 530, and that comes from the defendant's own mother. While police brutality is intolerable, bright line rules of exclusion that suppress voluntary statements and sweep broadly to prevent, require reversal of cases of overwhelming evidence is not the answer. In fact, it is to thwart the search for truth and does it costly disservice to the administration of justice. And that is why we have harmless error analysis. And there's no question that when you look at this case, a confession is that which falls under trial error. It is absolutely possible and amenable to subtract that piece of evidence and look to the remaining quantum of evidence and do an assessment that is what's trial error. While this court has previously said that there cannot be harmless error with respect to coerced statements, that was in direct response to the edict issued by the United States Supreme Court and directed this court in Illinois v. Lynham, all relying on pain, which has been overruled by Arizona v. Fulminante, which this court has yet to address but has embraced in other realms, specifically the Fourth Amendment and the Sixth Amendment and other Fifth Amendment concerns. It makes no sense to treat an error that is clearly quantifiable and amenable to the process differently than other forms of fundamental rights that involve police misconduct. Clearly the parade of horrors described by the defendant isn't a factor either. While there's harmless error analysis within the Fourth Amendment, other areas of the Fifth Amendment with counsel, you don't see police officers trampling through people's homes in response to allowing harmless error analysis. Realistically, it would only be the most rare and appropriate case where this court or any court would apply harmless error analysis. And just as Rehnquist recognized that clearly in Fulminante, he said the burden is high. It's beyond a reasonable doubt. Moreover, the probative value of a statement is always quite high, so it would be only the rarest and most extreme appropriate cases where harmless error analysis would apply. Additionally, any concerns with respect to deterrence has already been answered by that court. Deterrence belongs in the exclusionary rule. It has no place in answering a harmless question. Based upon the heightened burden we already have in Illinois for clearing convincing evidence, that should adequately address those concerns. And we have more transparency in the laws with respect to mandated videotaped statements. We know that the Office of Professional Standards have acted. We have civil remedies, 1983, as well as criminal prosecutions. That is what we should be deterring, improper police misconduct. Not suppressing voluntary statements to punish the police, which, as I said, thwarts the search for the truth. Or taking out of the harmless realm. And if we were to do that, it is to sort of ground we've been through. Just to give you one more chance. I'm sorry, I had it and lost it. I'll catch you before your light comes on. There are rare cases where a confession would be harmless, and I tell this court that this is one of them. One thing that was never contested in this case is who caused the injuries to that child. Cause of death was never injuries. So you take away that videotaped statement and you are left with nothing other than savage injuries to that baby. Can that be part of our analysis here, that the crime that we're ultimately dealing with is a terrible crime? No, Your Honor, but when you are assessing the harmlessness in the injuries, speak volumes. As to the intent, I don't mean to say that we should change the rules because of the nature of this case. What I'm saying is because of the nature of this case, it would be harmless. It's a forensic case where the medical evidence speaks volumes as to that defendant's intent. And what you'd be left with is the statements to the police which show a sure consciousness of guilt, and that he tried to blame a liver lacerated in three different places, bleeding lungs, hemorrhaging to her heart, and what marks upon a fall in the bathtub. If we do not know what the cause of the injury was, how can we say that it was not, clear and convincingly say it was not to affect the ultimate outcome of this case and to coerce a confession from the defendant? Because you've already recognized that you don't need that in People v. Woods, that you don't need to explain every injury. And the remaining totality of the circumstances absolutely demonstrates. But when we do the calculus, I don't know which one of you used that term, it's a nice one. When we do the calculus, doesn't it make a difference whether we know what the cause of the original injury was? And if we're trying to determine that it was not, it was not to affect the confession? Justice Fitzgerald, depending upon the allegations, that may be a necessary inquiry that the people absolutely must answer. Okay. So had the defendant said that, lawkeepers said, punch me if you don't cooperate with those detectives, well, then we would have to demonstrate that it was not part of some sort of tag team approach. But as long as there isn't some evidence that points in that direction, you don't have to answer it? No. We need to show that this defendant's statement was voluntary, and we do that by the remaining circumstances. And as I stated, assuming a worst case scenario was for an ill motive of the officer designed to coerce, that doesn't end your inquiry, because the ultimate question is whether or not that statement was voluntary. And the best way to ensure that the rights of defendants are balanced against the truth-seeking process is to look to the totality of the circumstances and fairly answer that question. So I ask this Court to clarify that there is no automatic rule of exclusion in coerce statements with respect to the heightened burden when it is triggered, and to apply that law in this case and find that the defendant's statement is voluntary. And further, I ask this Court to go on and answer the question that has remained open since 1998, when this Court decided Woods, and that is whether Illinois applies harmless error analysis. Thank you, Counsel. Thank you, Your Honor.